IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WAGMA MINA HUERTA, § § Plaintiff, § § vs. § § METROPOLITAN LIFE INSURANCE § COMPANY, SHELL OIL COMPANY § and SHELL OIL COMPANY § COMPREHENSIVE WELFARE § BENEFITS PLAN, § § Defendants. § | CIVIL ACTION NO. 4:19-CV-1107 |

### DEFENDANT METLIFE'S REPLY TO
### PLAINTIFF'S RESPONSE TO METLIFE'S MOTION TO DISMISS

Defendant Metropolitan Life Insurance Company ("MetLife") files this Reply to Plaintiff's Response to MetLife's Motion to Dismiss and states:

### INTRODUCTION

In her Complaint and Response to MetLife's Motion to Dismiss ("Response"), Plaintiff Wagma Mina Huerta contends that she is entitled to equitable relief under ERISA, 29 U.S.C. § 1132(a)(3) because MetLife breached its fiduciary duty by (1) failing to send her late husband notices of his right to convert or port his life insurance coverage under the Shell Oil Company Comprehensive Welfare Benefits Plan (the "Plan"); and (2) failing "to correct a wrong impression." (Response, p. 1). Without any specific factual allegations as to what Decedent's "wrong impression" was, except that he believed the monthly premiums he was paying covered the Policy, Plaintiff makes the conclusory allegations that MetLife was obligated to convey accurate material information, and to correct her husband's incorrect information or

1

misunderstanding of the terms of the Plan or coverage options. (APP. 7, ¶ 23; APP. 11, ¶ 42).[1] As to MetLife, in her pleadings and Response Plaintiff does not allege that Decedent's wrong impression was as a result of any representation or statement by MetLife, but solely because MetLife did not provide Decedent the notices and forms for converting or porting his life insurance coverage under the Plan. But because providing (or failing to provide) a plan participant notice of his or her conversion or porting rights is a ministerial act, rather than a fiduciary act, there can be no breach of a fiduciary duty. Additionally, neither ERISA nor the Plan obligated MetLife to provide such notices. Accordingly, Plaintiff's § 1132(a)(3) claim against MetLife fails as a matter of law.

## RESPONSE TO PLAINTIFF'S ARGUMENTS

**A.  As A Matter of Law, Providing Conversion and Portability Notices Is A Ministerial Act and Is Not Required By ERISA or The Plan.**

The well-established case law, including a decision from this Court, has held that providing notice of a plan participant's conversion or porting rights is a ministerial, not a fiduciary, act. *See, e.g.*, *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 986-89 (6th Cir. 2018); *Walker v. Fed. Express Corp.*, 492 F. App'x 559, 565 (6th Cir. 2012); *Trovato v. Prudential Ins. C. of Am.*, No. 17-cv-11428-DJC, 2018 WL 813368, at *2 (D. Mass. Feb. 9, 2018); *Keith v. Metro. Life Ins. Co.*, No. H-15-1030, 2017 WL 1026008, at *4 (S.D. Tex. Mar. 15, 2017); *Brenner v. Metro. Life Ins. Co.*, No. 11-12096-GAO, 2015 WL 1307394, at *9 (D. Mass. Mar. 23, 2015); *see also Tuhey v. Ill. Tool Works, Inc.*, No. 17-C-3313, 2017 WL 3278941, at *7 (N.D. Ill. Aug. 2, 2017) (long-term disability coverage). In *Keith*, relying on the court's holding in *Brenner*, this Court stated that MetLife had no fiduciary duty to notify the employee that his employer ceased making premium payments on his life insurance coverage or that he had the option to convert his coverage under the ERISA plan

---

[1] These cites and the others in this Reply are to MetLife's Appendix filed with its Motion to Dismiss.

to an individual life insurance policy, because any duty MetLife might have had to notify the employee "would be nonfiduciary and ministerial." *Keith*, 2017 WL 1026008, at *4; *see* 29 C.F.R. § 2509.75-8 (D-2).

In her Response, Plaintiff argues that whether MetLife was a fiduciary for purposes of providing any information or notices to Decedent is a fact question. However, here, based on the facts alleged and the applicable case law, failing to provide information to a plan participant as to porting or converting his or her coverage is not a fiduciary act. Additionally, Plaintiff only addresses the *Vest* case cited by MetLife, stating that the case has not been cited or followed by the Fifth Circuit. In making this argument, Plaintiff fails to acknowledge that the *Brenner* case has been relied upon and cited by this Court. Further, Plaintiff argues that the *Vest* case is distinguishable and not supportive of MetLife's argument that it has no duty to provide conversion or porting notices. This simply is not true, however, because in *Vest* the plaintiff went so far as to admit that "there is no general duty requiring ERISA fiduciaries to provide life insurance conversion notices." *Vest*, 905 F.3d at 989.

In *Vest*, the plaintiff sued her husband's employer under 29 U.S.C. § 1132(a)(3) for failing to inform him of his right to port or convert his optional life coverage under the employer's plan. *Vest*, 905 F.3d at 986. Resolute FP US Inc., the employer, filed a motion to dismiss for failure to state a claim. *Id*. As in this case, the plaintiff's breach of fiduciary duty claim did not rest on an allegation that her husband requested a conversion or porting form and it was not provided. *Id*. at 988-89. Nor did plaintiff allege that a misrepresentation or inaccurate statement regarding Mr. Vest's conversion rights prevented him from converting or porting his life insurance coverage. *Id*. at 989. Plaintiff's primary allegation was that Resolute should have known that conversion rights were important to Mr. Vest because he had extra life insurance during his employment and his

3

employment ended when he became disabled and began receiving long-term disability benefits. *Id*. at 988. In concluding that the plaintiff failed to state a viable claim, the court stated that "a failure-to-disclose claim cannot proceed when nothing requires the fiduciary to expressly disclose the information at issue." *Id*. at 989. Neither ERISA nor the Department of Labor regulations even require SPDs to contain conversion information. *Id*. Consequently, because the plaintiff only alleged Resolute failed to provide the notices the court held that the "plaintiff did not adequately plead an ERISA breach-of- fiduciary duty claim," meaning there was no duty to provide the conversion or porting notices. *Id.*

Moreover, the other cases cited by MetLife in its Motion to Dismiss, which Plaintiff did not address, state or indicate that there is no ERISA obligation to provide plan participants with post-termination notices of insurance conversion rights. *See, e.g*., *Walker*, 492 F. App'x at 565-66; *Brenner*, 2015 WL 1307394, at *8-10; *see also Prouty v. Hartford Life & Acc. Ins. Co*., 997 F.Supp.2d 85, 86-87, 90-91 (D. Mass. 2014) (stating that there is no ERISA obligation to provide plan participants with post-termination notice of insurance conversion rights). "Even a named plan fiduciary does not have to provide 'unsolicited advice' or 'inform beneficiaries every time a plan terms affects them.'" *Brenner*, 2015 WL 1307394, at *9 (quoting *Watson v. Deaconess Waltham Hosp*., 298 F.3d 102, 115 (1st Cir. 2002). In this case, neither the Plan nor the SPD states that MetLife is to provide such information. As set out in MetLife's Motion to Dismiss, the SPD instructs Plan participants to contact the Shell Benefits Center to obtain the forms to convert or port their life insurance coverage. (APP. 29, 36-37). Because MetLife has no duty to provide information regarding porting or converting life insurance coverage and providing such information is a ministerial act, Plaintiff's breach of fiduciary duty claim should be dismissed.

**B.      MetLife Did Not Breach Any Duty to Mr. Huerta.**

At one point in her Complaint, Plaintiff alleges that "[o]n the day of his termination from Shell, he was advised by MetLife, Shell, and the Plan that paperwork to port or convert the Policy would be sent to him," but no paperwork was ever sent. (APP. 5, ¶ 13).  In making this conclusory statement, Plaintiff does not allege any specific facts as to how MetLife, the claim administrator, along with Decedent's employer and the Plan, advised Decedent that paperwork to port or convert the Policy would be sent to him.  Nor does Plaintiff contend that because of this alleged statement by MetLife, Decedent did not convert or port his life insurance coverage.  Later in the Complaint, Plaintiff specifically states that in the exit interview with Shell HR, he was advised that he would be sent the paperwork. (APP. 6, ¶ 18).   No mention was made of MetLife.  In reviewing a motion to dismiss under Rule 12(b)(6), the Court should disregard legal conclusions or conclusory allegations masquerading as factual conclusions.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Allen v. Walmart Stores, L.L.C*., 907 F.3d 170, 177 (5th Cir. 2018).  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 55 U.S. 662, 678 (2009). Plaintiff's lone allegation against MetLife does not rise to that level and Plaintiff does not contend that it does in her Response.

In her Response, Plaintiff cites to *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig*., 57 F.3d 1255, 1264 (3rd Cir 1995) and argues that "[w]hen a plan administrator affirmatively misrepresents the terms of a plan **or** fails to provide information when it knows its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to plan participants and beneficiaries." (Response, p. 6, ¶ 17). Plaintiff contends that "MetLife surely understood that its insured might want to continue coverage after termination of employment. After all, why else

5

would it offer porting or conversion options at all?" (*Id*. at ¶ 18). But as already set out above, MetLife had no duty to send such information to Decedent and *In re Unisys Corp*. is inapplicable because Plaintiff's statement above is dictum and the case involves an employer's duty, as a plan administrator, not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures about their medical benefits after retirement. *Id*.

Plaintiff has not alleged any facts that MetLife knew of Decedent's personal circumstances or of his alleged desire to continue his life insurance coverage after his employment with Shell ended. Decedent never made a specific inquiry to MetLife about continuing his life insurance coverage, so MetLife did not have any information that Decedent allegedly had the "wrong impression" as to porting or converting the coverage. "Absent a specific participant-initiated inquiry, a plan [fiduciary] does not have any fiduciary duty to determine whether confusion about a plan term or condition exists." *Switzer v. Wal-Mart Stores, Inc*., 52 F.3d 1294, 1299 (5th Cir. 1995); *see Brenner*, 2015 WL 1307394, at *10 (Clearly, if MetLife was unaware of decedent's incompetence, it was in no position to take action to help him.). As the court stated in *Vest*, plaintiff's argument that her husband's employer should have known conversion rights were important to him because he purchased extra life insurance during his employment and his employment ended due to his disability did not create a duty to provide porting or converting information to decedent. *Vest*, 905 F.3d at 988. Accordingly, there are no allegations to support Plaintiff's claim that MetLife breached any alleged duty.

**C. The Plan and SPD May Be Considered by the Court in Determining If a Claim Has Been Stated.**

It is undisputed that Plaintiff's claims against Defendants for breach of fiduciary duties arises out of Decedent's life insurance coverage under the Plan. (APP. 4, ¶ 8). Plaintiff acknowledges in her Complaint that the Plan evidenced Decedent's life insurance coverage and

6

the SPD provided information to Plan participants about converting and porting their life insurance coverage. (APP. 4, ¶ 11; APP. 5-6, ¶¶ 15-17). Nevertheless, in her Response, Plaintiff objects to the Court considering these documents, Exhibits 2, 3 and 4, in MetLife's Appendix, because she "did not refer to the documents" in her Complaint. (Response, pp. 7-8, ¶¶ 22, 25). This is simply false. In her Complaint, Plaintiff specifically refers to two documents, the Plan and the Policy, regarding the life insurance coverage Decedent Arturo Huerta had while employed at Shell. First, in the Complaint, Plaintiff states that his coverage was "evidenced by a Certificate of Insurance for the Group Term Life Insurance Policy. The Group Policy number for this coverage was 9960-1-G (the "Policy")." (APP. 4, ¶ 11). Plaintiff alleges later in her Complaint that "[t]he Policy did not specify how an insured would maintain his Group Term Life Insurance coverage after ceasing employment. . . . The Plan, however, contained various provisions for Survivor Income Programs. . . . The Plan provided both conversion and porting options for Group Term Life Insurance coverage" (APP. 5, ¶¶ 14-15). Plaintiff then alleges:

> Shell provided that any claims filed under the Survivor Income Programs must be made by contacting the Shell Benefits Center. The Shell Benefits Center would provide the conversion notice. The Shell Benefits Center would also give contact information for MetLife. The conversion application was due to MetLife within 31days after the end of employment.
>
> The Plan also provided a porting option. The Shell Benefits Center would provide the porting notice. The Shell Benefits Center would also give contact information for MetLife. The porting application was due to MetLife within 31 days after the end of employment.

(APP.5-6, ¶¶ 16-17).

As explained in MetLife's Motion to Dismiss, the Summary Plan Description and Certificates of Insurance included in its Appendix are referred to as the "Plan" and the "Policy" in Plaintiff's Complaint. (Motion, p. 2, fn 2). Documents that a defendant attaches to a motion

to dismiss are considered part of the pleadings if, like here, they are referenced in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Plaisance v. Schiller*, No. H-17-3741, 2019 WL 1205628, at *4 (S.D. Tex. Mar. 14, 2019); *Patrick v. Whitaker*, No. H-18-2068, 2019 WL 588465, at *5 (S.D. Tex. Feb. 13, 2019). In this case, the Plan documents are part of Plaintiff's pleadings and can be properly considered because they assist the Court "in making the elementary determination of whether a claim has been stated." *Inclusive Cmties. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019); *Collins*, 224 F.3d at 499.

Plaintiff also argues that she could not have referred to the Certificates of Insurance because they were never provided to her and she should be granted leave to amend her Complaint to assert a claim against MetLife for failing "to provide documents pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii), 29 C.F.R. § 2560.503-1(m)(8)(I)-(iv), and the rules and regulations of the Department of Labor." (Response, p. 6, ¶ 16; pp. 8-9, ¶ 26). Plaintiff cites no authority for a private cause of action or penalties for any alleged violation of 29 C.F.R. § 2560.503-1(h)(2)(iii) or of any rules and regulations of the Department of Labor.

Section 2560.503-1(h)(2)(iii) requires ***employee benefit plans*** to "[*p*]*rovide* that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. 2560.503-1(h)(2)(iii) (emphasis added). Whether a document, record, or other information is relevant to a claim is determined by reference to 29 C.F.R. § 2560.503-1(m)(8)(i)-(iv). *Id*. Neither 29 C.F.R. § 2560.503–1(h)(2)(iii) and (m)(8) nor ERISA obligate or create a viable claim against a claim administrator to produce Plan or claim documents "relevant to" a claimant's claim. *See Greer v. Operating Eng'rs Local 324 Pension Fund*, No. 17-11832, 2017

8

WL 3891785, at *2-3 (E.D. Mich. Sept. 6, 2017); *see also Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 58 (2d. Cir. 2016) ( The regulation does not contain a civil penalties provision, but it contains a remedial provision, 29 C.F.R. § 2560.503–1(l), which addresses a plan's "[f]ailure to establish and follow reasonable claims procedures." The absence of a civil remedies provision with the inclusion of a remedial provision means that the Department intended the remedial provision to be exclusive.).

Some claimants have argued that the failure to provide documents in accordance with § 2560.503–1(h)(2)(iii) and (m)(8) is a failure to comply with the claim procedures outlined in 29 U.S.C. § 1133 and gives rise to penalties under 29 U.S.C. § 1132(c)(1).  But courts have been quick to strike down this theory. *See, e.g., Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1160-61 (9th Cir. 2016); *Halo*, 819 F.3d 42, 58, 60–61 (2d. Cir. 2016); *Medina v. Metro. Life Ins. Co.*, 588 F.3d 41, 48 (1st Cir. 2009); *Brown v. J.B. Hunt Transport Servs., Inc.*, 586 F.3d 1079, 1089 (8th Cir. 2009).  As the First Circuit stated in *Medina*, "[i]t is well established that a violation of § 1133 and its implementing regulations does not trigger monetary sanctions under § 1132(c)." *Medina*, 588 F.3d at 48 (citing *Wilczynski v. Lumbermens Mut. Cas*. Co., 93 F.3d 397, 406 (7th Cir. 1996); *Sturhlreyer v. Armco, Inc*., 12 F.3d 75, 79 (6th Cir. 1993); *Groves v. Modified Ret. Plan for Hourly Paid Emps. of the Johns Manville Corp*., 803 F.2d 109, 117-18 (3d Cir. 1986)). The alleged "failure to produce documents required to be produced under 29 C.F.R. § 2560.503–1(h)(2)(iii) cannot give rise to a penalty under 29 U.S.C. § 1132(c)(1) because 29 C.F.R. § 2560.503–1(h) imposes requirements on benefits *plans* not on *plan administrators* and 29 U.S.C. § 1132(c)(1) only applies to documents that *plan administrators* are required to produce." *Lee*, 829 F.3d at 1160-61 (emphasis in original); *see VanderKlok v. Provident Life and Accident Ins. Co., Inc.,* 956 F.2d 610, 618 (6th Cir.1992) (a plan administrator cannot violate § 1133 and

potentially incur liability under § 1132(c), because § 1133 imposes obligations on the "plan" rather than the "plan administrator." ).

MetLife is neither the Plan nor the Plan administrator. Consequently, not only is there no private cause of action for an alleged violation of 29 C.F.R. § 2560.503–1(h), MetLife could not be liable because it is the claim administrator, not the Plan or Plan Administrator. Plaintiff presumably knows this because the documents she claims MetLife did not produce are the Certificates, which are the Plan documents. Section 1132(c) provides a cause of action for penalties if a ***plan administrator*** fails to timely provide properly requested Plan documents. Although Plaintiff complains that MetLife did not produce these Plan documents when requested, Plaintiff does not seek leave to amend to assert a claim under 29 U.S.C. § 1132(c), apparently recognizing MetLife, as the claim administrator, cannot be liable under the statute. *See Keith v. Metro. Life Ins. Co.,* No. H-15-1030, 2016 WL 7017421, at *4 (S.D. Tex. Nov. 30, 2016). Plaintiff's request to replead should be denied because any attempt to do so would be futile.

## CONCLUSION

Advising Plan participants of their rights and options under the Plan, including providing information as to their conversion and porting rights, is not a fiduciary function. Further, the obligation to distribute Plan information is generally placed only on the Plan administrator, not the claim administrator. Plaintiff's claim against MetLife for its alleged duty and breach of that duty for failing to provide Decedent notices of his right to convert or port his life insurance coverage is indistinguishable from the line of cases MetLife has cited in its Motion and this Reply. Sending notices of these rights is ministerial in nature. Moreover, the SPD provided to Decedent had already placed him on notice as to his right to convert or port his coverage. Accordingly, Plaintiff's breach of fiduciary duty claim against MetLife must be dismissed.

WHEREFORE, Defendant Metropolitan Life Insurance Company requests that the Court grant its Motion to Dismiss, dismiss Plaintiff's Complaint, deny Plaintiff's request for leave to amend, and grant all other and further relief to which MetLife is justly entitled.

Respectfully submitted,

/s/ *Linda G. Moore*
Linda G. Moore
State Bar No. 14359500
Southern District No. 20049
ESTES THORNE & CARR PLLC
3811 Turtle Creek Blvd., Suite 2000
Dallas, Texas  75219
(214) 599-4000
(214) 599-4099 (facsimile)
lmoore@estesthornecarr.com

ATTORNEY-IN-CHARGE FOR
DEFENDANT METROPOLITAN LIFE
INSURANCE COMPANY

**CERTIFICATE OF SERVICE**

 I hereby certify that on May 13, 2019 this Reply was electronically transmitted to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Amar Raval
Berg Plummer Johnson & Raval, LLP
3700 Buffalo Speedway, Suite 1150
Houston, Texas 77098

Linda M. Dedman
Dana E. Harbin
Dedman Law, PLLC
12720 Hillcrest Rd., Suite 1042
Dallas, TX 75230

Michael Bennett
Kelsey M. Machado
Eversheds Sutherland LLP
1001 Fannin St., Suite 3700
Houston, TX 77002

                */s/ Linda G. Moore*
                Linda G. Moore