United States District Court
Southern District of Texas

**ENTERED**

January 22, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WAGMA MINA HUERTA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-1107 |
| | § | |
| METROPOLITAN LIFE | § | |
| INSURANCE COMPANY, et al. | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendant Metropolitan Life Insurance Company's ("MetLife") Motion to Dismiss (Doc. 10) and Defendants Shell Oil Company ("Shell") and Shell Oil Company Comprehensive Welfare Benefits Plan's (the "Plan") (collectively "Shell Defendants") Motion to Dismiss (Doc. 12). The court has considered the motions, the responses, the replies, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that both motions be **GRANTED**.

## I.  Case Background

Plaintiff filed this action pursuant to the Employee Retirement Income Security Act[2] ("ERISA") seeking equitable relief for alleged breaches of fiduciary duty by Defendants related to the denial of life insurance coverage for the death of Plaintiff's

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  See Doc. 16, Ord. Dated April 2, 2019.

[2]    See 29 U.S.C. §§ 1001-1461.

husband ("Arturo").

## A.  **Factual Background**

Arturo was an employee of Defendant Shell from November 2006 through February 2017.[3]  At the start of his tenure, Arturo enrolled in the health insurance, life insurance, and accidental death and dismemberment insurance programs available to Defendant Shell's employees.[4]  Defendant MetLife provided the life insurance coverage, and Defendant Shell paid the premiums.[5]  In 2013, Arturo, who had previously survived two bouts with cancer, increased his life insurance coverage to the maximum amount available under Defendant Plan's Survivor Income Programs.[6]

According to the life insurance policy ("Policy"), Defendant "MetLife could terminate the [P]olicy on the date premiums were due but not paid, subject to" a thirty-one-day grace period, and Defendant "MetLife was obligated to notify the policyholder in writing of the expiration of this grace period."[7]  Although the Policy itself did not explain how to convert or port coverage after termination, Defendant Plan's terms included options for converting

---

[3]    See Doc. 1, Pl.'s Orig. Compl. p. 3.

[4]    See id.

[5]    See id.

[6]    See id. pp. 3, 4.

[7]    Id. p. 4.  Plaintiff's complaint did not cite the genesis or nature of Defendant MetLife's alleged obligation.  See id.

2

or porting life insurance coverage after termination.[8]   Arturo's "intentions were to continue life insurance" after his termination.[9]

On February 28, 2017, Defendant Shell terminated Arturo.[10]   In an exit interview with human resources, Arturo "was advised that he would be sent paperwork to port over his insurance."[11]   At the time of his termination, Arturo received no notice of his right to convert his life insurance coverage, and Defendants failed to "provide the appropriate conversion notice that would have allowed [Arturo] to convert his life insurance coverage from [Defendant] MetLife."[12]

According to the complaint:

[Defendant] Shell provided that any claims filed under the Survivor Income Programs must be made by contacting the Shell Benefits Center.  The Shell Benefits Center would provide the conversion notice.  The Shell Benefits Center would also give contact information for [Defendant] MetLife.  The conversion application was due to [Defendant] MetLife within 31 days after the end of employment."

---

[8]   See id.

[9]   Id.

[10]   See id. pp. 3, 5.

[11]   Id. p. 5. Elsewhere in the complaint, Plaintiff alleged, "On the day of [Arturo's] termination from Shell, he was advised by [Defendants] MetLife, Shell, and . . . Plan that paperwork to port or convert the Policy would be sent to him." Id. p. 4.  The complaint contains no facts as to how or when Defendants MetLife and Plan promised Arturo that paperwork would be sent to him.  See id. The facts of the complaint do not lend themselves to an inference that either Defendant MetLife or Defendant Plan had the opportunity to make that promise. See id.

[12]   Id. p. 5.

     [Defendant] Plan also provided a porting option.  The Shell Benefits Center would provide the porting notice. The Shell Benefits Center would also give contact information for [Defendant] MetLife.  The porting application was due to [Defendant] MetLife within 31 days after the end of employment.[13]

Plaintiff averred that Defendants Shell and Plan knew that Arturo had maximized his life insurance coverage in 2013, but, "[o]n information and belief, neither offered, mentioned or discussed using the Accelerated Benefit Option to secure . . . the Group Term Life Insurance benefits at the time of his termination."[14]  Arturo contacted Defendant Shell "several times to discuss other ported benefits[,]" and paid timely premiums for Consolidated Omnibus Budget Reconciliation Act ("COBRA") coverage for health insurance.[15]  However, Defendant MetLife never notified Arturo of his options to continue life insurance.[16]  If it had, Plaintiff asserted, Arturo "would have paid those premiums and continued the [p]olicy."[17]

On May 18, 2017, Arturo died, and Plaintiff filed a claim for life insurance benefits with Defendant MetLife.[18]  Defendants Shell

---

13   Id. pp. 4-5.

14   Id. pp. 5-6.

15   Id. p. 6.

16   See id.

17   Id.

18   See id.

and MetLife notified Plaintiff by phone that no coverage existed.[19]
In a second phone conversation later that day, Defendant MetLife
confirmed that no notice concerning converting or porting options
or separation letter with information on converting or porting
options had been sent to Arturo.[20]  On June 15, 2017, Plaintiff sent
Letters Testamentary to Defendants Shell and Plan and requested a
list of Arturo's benefits and a written record, if it existed, of
Arturo's termination meeting.[21]   Neither Defendant responded in
writing.[22]

On January 12, 2018, Defendant MetLife denied Huerta's claim
for life insurance benefits, and Plaintiff appealed.[23]  In May 2018,
Defendant   MetLife   requested   the   transcripts   of   the   phone
conversations on June 15, 2017, but Defendant Shell refused to
release them.[24]

On June 27, 2018, Defendant MetLife denied Plaintiff's appeal,
stating   that   Arturo's   life   insurance   coverage   ended   on   his
termination date in February 2017 and that, pursuant to Defendant
Plan, Arturo was responsible for requesting forms for converting or

---

[19]    See id.

[20]    See id. pp. 6-7.

[21]    See id. p. 7.  The complaint indicated that this request was made in
response to Defendant Shell's assertion that, at the exit interview, it had
notified Arturo that the Policy was being canceled.   See id.

[22]    See id.

[23]    See id.

[24]    See id.

porting life insurance coverage and failed to do so.[25]

## B.  **Procedural Background**

On January 7, 2019, Plaintiff filed this action in the U.S. District Court for the Western District of Texas, alleging that Defendants breached their fiduciary duties imposed by ERISA.[26] Plaintiff alleged that Defendants breached their fiduciary duties in the following ways: (1) Defendant MetLife failed to provide notice "that the March premium payment was not made, that it was due or past due, or of the applicable grace period to make the premium payment[;]" or notice of Arturo's converting or porting options; (2) Defendant Shell failed to provide notice upon termination that it would stop making premium payments or notice of Arturo's converting or porting options; and (3) Defendant Plan failed to provide notice of Arturo's converting or porting options.[27]  Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff sought equitable relief in the form of a surcharge in the amount of $452,800, the amount of policy proceeds denied and other equitable relief to allow payment of those proceeds.[28]

Defendants filed their pending motions to dismiss on March 22,

---

[25]    See id.

[26]    See id. pp. 1, 8-9.

[27]    See id.

[28]    See id. pp. 11, 13-14.

2019.[29]  Defendant MetLife submitted an appendix with its motion that included Plaintiff's complaint, excerpts from Shell Defendants' Summary Plan Description and from Defendant MetLife's certificates of insurance for basic and optional life insurance coverage.[30]  Shell Defendants attached the Summary Plan Description as an exhibit.[31]

Also on March 22, 2019, Shell Defendants filed an unopposed motion to transfer the case to this district based on a forum- and venue-selection clause in the Defendant Plan's written materials.[32] The motion was granted, and the case was transferred shortly thereafter.[33]

After transfer, Plaintiff sought continuance of her deadline to respond to Defendants' motions, and the court granted Plaintiff additional time to respond.[34]  On April 26, 2019, Plaintiff filed her response.[35]  Defendants thereafter sought continuance of their

---

[29]    See Doc. 10, Def. MetLife's Mot. to Dismiss; Doc. 12, Shell Defs.' Mot. to Dismiss

[30]    See Doc. 11, Def. MetLife's App'x to its Mot. to Dismiss.

[31]    See Doc. 12-1, Ex. A to Shell Defs.' Mot. to Dismiss, Summary Plan Description.

[32]    See Doc. 13, Shell Defs.' Unopposed Mot. to Transfer Venue.

[33]    See Doc. 14, Ord. Granting Leave to Transfer Venue; Doc. 15, Docket Notation on Transfer.

[34]    See Doc. 17, Pl.'s Unopposed Mot. to Continue Deadline to Respond to Defs.' Mots. to Dismiss; Doc. 18, Ord. Dated Apr. 4, 2019; Doc. 19, Pl.'s Unopposed 2[d] Motion to Continue Deadline to Respond to Defs.' Mots. to Dismiss; Ord. Dated Apr. 18, 2019.

[35]    See Doc. 21, Pl.'s Resp. to Def. MetLife's Mot. to Dismiss; Doc. 22, Pl.'s Resp. to Shell Defs.' Mot. to Dismiss.

deadline to reply, which the court granted.[36]  On May 13, 2019, Defendants filed their responses.[37]

## II.  Dismissal Standard

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court may consider, in addition to the complaint itself, "any documents attached to the complaint[] and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).  When a defendant attaches such documents, it "merely assists the plaintiff in establishing the basis of the suit[] and the court in making the elementary determination of whether a claim has been stated."  Inclusive Communities Project, Inc. v. Lincoln Prop. Co., 920 F.3d 890, 900 (5th Cir. 2019)(quoting Collins v. Morgan Stanley Dean Witter, 224 F.3d 496 (2000)).

The court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  Shaw v. Villanueva, 918 F.3d 414, 416 (5th Cir. 2019)(quoting Heaney v. U.S. Veterans Admin., 756 F.2d 1215, 1217 (5th Cir. 1985)).  A

---

[36]     See Doc. 23, Defs.' Unopposed Mot. to Extend Time to File Replies to Pl.'s Resps. to Defs.' Mots. to Dismiss; Doc. 24, Ord. Dated May 1, 2019.

[37]     See Doc. 25, Def. MetLife's Reply to Pl.'s Resp. to Def. MetLife's Mot. to Dismiss; Doc. 26, Shell Defs.' Reply to Pl.'s Resp. to Shell Defs.' Mot. to Dismiss.

complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. 678.

### III. Analysis

Defendant MetLife and Shell Defendants filed motions to dismiss Plaintiff's entire case. In addition to disputing that this action should be dismissed, Plaintiff contends that Defendants' motions require the resolution of fact issues better suited for a post-discovery motion for summary judgment and objects to the documents that Defendants attached as exhibits to their motions. Plaintiff also requests leave to amend in the event that the court is inclined to grant Defendants' motions.

Addressing first Plaintiff's objections, the court finds that, even if Plaintiff did not have possession of the certificates of

insurance as alleged,[38] Plaintiff referred to the terms of the Plan and the Policy[39] repeatedly in her complaint.  Without a doubt, those documents are central to Plaintiff's claim that Defendants violated their fiduciary duties related to benefits provided therein.  That said, the court finds Plaintiff's complaint allegations provide sufficient factual information for the court to rule on the pending motions without consideration of the Summary Plan Description or the certificates of insurance.

## A.  **Breach of Fiduciary Duty**

ERISA's purpose is, in part, "to protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.  29 U.S.C. § 1001(b).  In support of that purpose, a beneficiary may bring a civil action to obtain appropriate equitable relief to redress violations of the provisions of ERISA or the terms of the plan or to enforce those provisions or terms.  A claim for equitable relief based on the breach of fiduciary duties under ERISA requires proof that: (1) the

---

[38]    Plaintiff alleges only that she did not have the certificates of insurance, not that she did not possess the Summary Plan Description.  She makes no allegation that Defendants failed to provide Arturo with the Summary Plan Description.

[39]    In fact, Plaintiff referred to the Policy by policy number, which corresponds with Defendant MetLife's Exhibit 3.

defendant is a plan fiduciary; (2) the defendant breached its fiduciary duties; (3) the breach caused the plaintiff's injury; and (4) the equitable relief sought is appropriate. Keith v. Met. Life Insurance Co., CIVIL ACTION NO. H-15-1030, 2017 WL 1026008, at *3 (S.D. Tex. March 15, 2017)(unpublished)(quoting Shonowo v. Transocean Offshore Deepwater, Inc., Civil Action No. 4:10-cv-1500, 2011 WL 3418405, at *5 (S.D. Tex. Aug. 3, 2011)).

ERISA's definition of "fiduciary" states that:

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). In 2000, the U.S. Supreme Court succinctly restated the definition as "someone acting in the capacity of manager, administrator, or financial adviser to a plan." Pegram v. Herdrich, 530 U.S. 211, 222 (2000). Pegram further clarified, in line with the wording of the statute, that the focus in determining whether someone fit the definition of fiduciary should be on the function being performed at the time that a plan beneficiary's interest was adversely affected. Id. at 226. In performing fiduciary functions, a person must:

discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries[,] . . .

11

with the care, skill, prudence, and diligence under the
circumstances then prevailing that a prudent man acting
in a like capacity and familiar with such matters would
use in the conduct of an enterprise of a like character
and with like aims[,] . . . [and] in accordance with the
documents and instruments governing the plan . . . .

29 U.S.C. § 1104(a)(1).

This court relies on a recent opinion that provides guidance
for analyzing the sufficiency of Plaintiff's factual allegations in
this case.  See Keith, 2017 WL 1026008, at **3-5.[40]  The facts in
that case were as follows.

John White ("White") was enrolled in his employer's group
insurance program, which included insurance coverage for life,
long-term disability, and accidental death and dismemberment.  See
id. at *1.  White's employer paid the premiums as part of White's
compensation.  See id.  White was diagnosed with monoplegia and
amyotrophic lateral sclerosis ("ALS"), precipitating a leave of
absence pursuant to the Family Medical Leave Act, during which his
employer continued to pay the insurance premiums.  See id.  Two
weeks after White's last day at work, White attended an exit
interview, at which White reaffirmed his desires (1) not to make
any changes to his insurance elections, and (2) to keep [Linda]
Keith as the beneficiary for his life insurance policy."  Id.

White applied for long-term disability benefits, and the
claims administrator approved the application but notified White

---

[40]     Although the Keith opinion addressed motions for summary judgment,
the legal analysis assists this court in determining whether Plaintiff's factual
allegations state a claim for breach of fiduciary duty.

that the benefits would begin after a three-month elimination period. See id. A couple of weeks later, the claims administrator "internally generated a claim for continuation of group life insurance for White." Id. The claims administrator sent White a letter acknowledging receipt of the internally generated claim and explained that the policy allowed for continuation during work absences, advised that a representative might contact White, and informed him that he need not take any action at that time. Id. The claims administrator sent a second letter "stating that [White's] insurance plan required him to be totally disabled continuously for nine consecutive months before he would be eligible for continuation of group life insurance coverage during his absence from work." Id. That letter also informed White that a decision would not be made on the claim for continuation of life insurance until that waiting period expired. See id. The claims administrator did not inform White in either letter of other ways to continue life insurance coverage or that he did not qualify for continuation under the provision described in the second letter due to his age at the time of total disability. See id.

The human resources manager for White's employer also received the second letter and contacted the claims administrator for clarification. See id. at *2. The claims administrator told her that "White would need to convert his life insurance to an individual policy in order to maintain coverage during the waiting

13

period." Id. Neither the claims administrator nor White's employer notified White that the employer would cease paying premiums upon his termination at the end of his FMLA leave, that the premium payment was due or past due, or that White had the right to convert or port his life insurance upon termination. See id. Following White's death, his named beneficiary filed a claim for death benefits but was denied because coverage had ended when his employer stopped paying the premiums and because White did not qualify for continuation under the provision described in the second letter. See id.

The court identified two alleged breaches of fiduciary duty against the claims administrator: (1) "failure to notify White of his options to maintain his life insurance[;]" and (2) upon gratuitously initiating the claim for continuation of White's life insurance, failure to do so in a way that was not confusing or misleading. See id. at **3-4. Regarding the first, the plaintiff argued that, although the claims administrator did not have a routine obligation to notify, an obligation arose as to White because the claims administrator had knowledge of White's serious health condition. See id. at *3. The court found that the plaintiff failed to consider whether a duty to notify was a ministerial or a fiduciary function. See id. at *4. The court concluded that it was merely ministerial and concluded that any duty the claims administrator had to notify White of his option to

convert his life insurance or of his employer's cessation of premium payments was not a fiduciary duty.  See id.

As to the second alleged breach, the court noted that the claims administrator failed to address whether initiating the continuation claim was a fiduciary duty.  See id.  The court also found that the evidence suggested the human resources manager had found the second letter about that claim to be confusing.  See id. The court concluded that factual issues existed "as to whether [the claims administrator] acted as a fiduciary and whether it breach a fiduciary duty to communicate in a manner calculated to avoid confusion and misunderstanding."  Id.

Against White's employer, the plan administrator, the court identified one alleged breach: failure to notify White upon termination of his option to convert his life insurance.  Id.  The court explained, "Plan administrators ordinarily owe no fiduciary duty to participants or beneficiaries to explain plan terms to them or to confirm that they understand the terms."  Id. at *5.  "But the facts of this case are not ordinary."  Id.  In support of that finding, the court highlighted that the human resources manager "was aware of White's condition and actively involved in White's claim process," that the human resources manager instructed the claims administrator not to call White because of his condition, and that the human resources manager contacted the claims administrator with questions about the meaning of the second letter

but she did not provide the clarification to White.  <u>Id.</u>  The court concluded that a reasonable jury could find that the human resources manager's gratuitous actions were fiduciary in nature, and, if so, she "had a duty to act prudently [to] avoid misunderstandings and confusion."  <u>Id.</u>  A reasonable jury could also conclude that her failure to provide White with clarification about the second letter breached that duty.  <u>See</u> <u>id.</u>

<u>Keith</u> provides a perfect road map for the analysis of the parties' arguments in this case.

### 1.  Defendant MetLife's Motion

Concerning notification, Defendant MetLife argues that, although it was a claims administrator that performed fiduciary functions for Defendant Plan, it was not a fiduciary with respect to "providing conversion or porting notice forms or . . . advising Plan participants as to the deadlines to convert or port life coverages" and that it did not have a duty to do so.[41]

Plaintiff here made the very same allegations against Defendant MetLife as were alleged in the <u>Keith</u> case.  Specifically, Plaintiff here alleged that Defendant MetLife breached its fiduciary duty by failing to notify Arturo of his option to convert his life insurance and by failing to notify him of Defendant Shell's cessation of premium payments.  The rationale stated in <u>Keith</u> for finding these functions ministerial, rather than

---

[41]     Doc. 10, Def. MetLife's Mot. to Dismiss p. 7.

fiduciary, in nature is convincing and adopted by this court.  See Keith, 2017 WL 1026008, at **3-4.  Thus, the alleged failure to perform those actions cannot support a claim for equitable relief for the breach of a fiduciary duty.  As Plaintiff's complaint failed to state a claim against Defendant MetLife for breach of fiduciary duty, its motion to dismiss should be granted.

### 2. Shell Defendants' Motion

Shell Defendants argue that Plaintiff did not allege "intentional deception, affirmative misrepresentation, or other affirmative communication that [was] materially misleading and that ERISA does not impose a duty to disclose information beyond what is in the express disclosure requirements."[42]

Plaintiff made the same allegations of breaches of fiduciary duty against Shell Defendants as she did against Defendant MetLife. As observed by the Keith court, plan administrators ordinarily do not have a fiduciary duty to explain plan terms or to confirm that they understand the terms.  An exception recognized by the Fifth Circuit is:

> [I]f and when a plan administrator thus elects to act as a Good Samaritan and—without prior inquiry from the participant—gratuitously communicate with a plan participant about [a past-due premium], the administrator must do so in a manner calculated to avoid confusion and misunderstanding, whether by omission or commission.

Keith, 2017 WL 1026008, at *4 (quoting Switzer v. Wal-Mart Stores,

---

[42]   Doc. 12, Shell Defendants' Mot. to Dismiss p. 7 (emphasis omitted); see also id. pp. 8-10.

<u>Inc.</u>, 52 F.3d 1294, 1298-99 (5th Cir. 1995)).

Unlike <u>Keith</u>, the facts of this case *are* ordinary.  The facts presented in Plaintiff's complaint only support the allegation that Arturo was not notified of certain information.  No facts alleged in Plaintiff's complaint suggest that Shell Defendants took any gratuitous action that was fiduciary in nature, which in turn, gave rise to a duty to avoid misunderstandings and confusion.  <u>See Switzer</u>, 52 F.3d at 1299.  Moreover, no facts alleged suggest that Shell Defendants created "any confusion or misunderstanding, whether by omission or commission."  <u>Id.</u>

Although Plaintiff pled no gratuitous action by Shell Defendants, she sprinkled the complaint with statements about Arturo's health and his subjective thoughts, which raise sympathy for Arturo and, by extension, his widow, but do not trigger an inference that Shell Defendants had knowledge of these facts.  For example, Plaintiff mentioned Arturo's prior bouts with cancer, his terminal condition, his reason for increasing his life insurance, his intention to continue the life insurance policy after termination, and his assumption that the COBRA payments covered life insurance.  None of these pieces of information suggest any gratuitous action by Shell Defendants.  In fact, the complaint did not allege any facts suggesting that Shell Defendants had knowledge of his condition or concerns.

Additionally, the complaint suggested that Arturo knew of the

option to continue life insurance because Plaintiff was able to represent that Arturo intended to do so and that he had been told that paperwork for doing so would be sent to him.  The complaint gave the impression that Arturo misunderstood the Plan provisions on converting or porting life insurance coverage.  But nothing in the factual allegations suggested that Shell Defendants created Arturo's misunderstanding.  To the contrary, Plaintiff cited to the direct and detailed Plan provisions on the topic.  Lastly, Plaintiff's isolated statement that Arturo contacted Defendant Shell "several times to discuss other ported benefits[]" lacked any assertion that the conversation included discussion of life insurance, much less that Defendant Shell provided information that confused or misled Arturo on the topic.[43]

Plaintiff failed to allege any conduct by Shell Defendants that would support a claim for equitable relief for the breach of a fiduciary duty.  As Plaintiff's complaint failed to state a claim against Shell Defendants for breach of fiduciary duty, their motion to dismiss should be granted.

**C.   Plaintiff's Request for Leave to Amend**

In both responses to the motions to dismiss, Plaintiff requests leave to amend should the court be inclined to grant the motions to dismiss.  Plaintiff seeks leave "to add a claim for ERISA penalties for [Defendants'] failure to provide documents

---

[43]     Doc. 1, Pl.'s Orig. Compl. p. 6.

pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii), 29 C.F.R. § 2560.503-1(m)(8)(i)-(iv), and the rules and regulations of the Department of Labor."[44]  Plaintiff also states the she "reserves the right to amend her Complaint to allege any other factual details necessary to establish plausibility under <u>Twombly</u>."[45]

Federal Rule of Civil Procedure 15(a)(2), which applies in the absence of a scheduling order, advises the court to grant leave freely "when justice so requires."  However, "where amendment would be futile, the court need not grant the plaintiff leave to amend." <u>In re Sherwin Alumina Co.</u>, 932 F.3d 404, 411 (5th Cir. 2019).  An amendment is futile if it would not survive a motion to dismiss. <u>N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.</u>, 898 F.3d 461, 478 (5th Cir. 2018)(quoting <u>Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n</u>, 751 F.3d 368, 378 (5th Cir. 2014)).

Plaintiff's request for leave to amend should be denied for at least two reasons.  First, Plaintiff fails to establish, in her request or in response to Defendants' opposition, that ERISA allows a private right of action for violations of 29 C.F.R. § 2560.503-1(h)(2)(iii), 29 C.F.R. § 2560.503-1(m)(8)(i)-(iv), and the rules and regulations of the Department of Labor.  The onus is on Plaintiff, as movant, to state a viable claim for relief.

---

[44]    Doc. 21, Pl.'s Resp. to Def. MetLife's Mot. to Dismiss pp. 9-10; Doc. 22, Pl.'s Resp. to Shell Defs.' Mot. to Dismiss pp. 9-10.

[45]    Doc. 21, Pl.'s Resp. to Def. MetLife's Mot. to Dismiss p. 9; Doc. 22, Pl.'s Resp. to Shell Defs.' Mot. to Dismiss p. 10.

Additionally, the reasons that this court recommends dismissal of this action are rooted in a fundamental failure to present facts that establish a claim for breach of fiduciary duty. Plaintiff does not seek leave to amend to present additional relevant facts and does not suggest there are any. In reality, the missing facts are of the type that Plaintiff must have known when she filed this action and most certainly would have alleged if they existed.

If, however, Plaintiff can show that a private right of action is available for the alleged failure to produce documents or that she can allege additional facts that would justify reconsideration, she may file a motion for leave to amend that thoroughly addresses those issues, along with a proposed amended complaint. The motion for leave to amend is due on February 7, 2020.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant MetLife's Motion to Dismiss and Shell Defendants' Motion to Dismiss be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 22<ins>nd</ins> day of January, 2020.

Nancy K. Johnson
United States Magistrate Judge